IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KARL MARTIN and DOROTHY MARTIN, Plaintiffs, v. LIBERTY MUTUAL INSURANCE COMPANY Defendant. | CIVIL ACTION NO. 21-4360 |
|---|---|

**MEMORANDUM RE: DEFENDANT'S**

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Baylson, J.**                                                                                        **March 20, 2023**

This dispute arises from an automobile accident and a subsequent claim for reimbursement from an insurance company for injuries suffered. For the reasons laid out below, the Defendant's Motion for Partial Summary Judgment shall be granted as to the question of whether the Plaintiffs electronically signed certain forms, and denied as to the Plaintiffs' statutory bad faith claim.

**I.    SUMMARY OF FACTS AND PROCEDURE**

The facts laid out by the parties are as follows. The Plaintiffs, Karl and Dorothy Martin ("the Martins"), held an automobile insurance policy issued by Defendant LM General Insurance Co. ("LM"). Def. Statement of Facts (ECF 52-1) ¶¶ 1-3. LM presents evidence that the Plaintiffs' policy had limited tort coverage as well as non-stacking underinsured motorist ("UIM") coverage. Id. ¶¶ 4-5. On May 30, 2020, Mr. Martin was in a car accident in which he was rear-ended. Id. ¶ 6. The police report originally indicated that Mr. Martin was not injured, but he went to urgent care on June 3, 2020 complaining of neck pain. Id. ¶¶ 6-7. He was diagnosed with a neck strain/sprain, was prescribed some muscle relaxants and pain medication, and was instructed to

treat it with ice and heat. Id. ¶ 6. On June 15, 2020, Mr. Martin went to his physician complaining of pain in his elbow, knee, neck, and back. Id. ¶ 9. His physician diagnosed him with a series of strain/sprains and referred him for an MRI. Id. The physician also prescribed an egg crate mattress; lumbar, elbow, and knee support; heat packs; a cervical pillow; and a TENS unit. Id. Mr. Martin's doctor concluded that Mr. Martin "had degenerative disease of his cervical and lumbar spine." Id. "He also had sprain of his lateral collateral ligament of his right knee and a tear at medial collateral ligament of his left elbow." Id. ¶ 13. Mr. Martin attended at least 68 therapy visits. Id. ¶ 15.

While not mentioned in the Martins' Response, and unaddressed in LM's Reply, Mr. Martin testified in his deposition that he still feels pain in his back and elbow. Resp. Ex. F (ECF 64-8) at 53:8-56:21. Mr. Martin also testified that he cannot lift objects with his left arm as he used to be able to do. Id. at 56:23-57:8. He testified that he treats his pain with Tylenol. Id. at 60:11-19. He testified that he returned to his doctor because of the pain in December 2020 and August 2022. Id. at 60:20-61:17. He testified that he has been unable to perform any household chores and has been unable to have sex since 2020. Id. at 64:6-67:8. He also testified that Mrs. Martin has to help him shower because of his arm injury and his back pain, and that he cannot drive because he cannot sit for long periods of time. Id. at 67:9-70:24. Mr. Martin testified that he is unable to work in home repair as he used to because of his injuries. Id. at 71:12-72:6. Mrs. Martin also testified that her husband's activities and ability to perform household chores were limited, and that he cannot lift his arm. Resp. Ex. E (ECF 64-7) at 17:4-18:14; 57:23-58:23.

Mr. Martin submitted an "underinsured motorist" claim to LM on February 1, 2021 demanding $75,000, which the Martins claimed was the "full and compete applicable policy limits." Def. Statement of Facts (ECF 52-1) ¶¶ 16, 19. LM alleges that the claim agent determined

that the Martins' limited tort policy did not apply and so did not cover non-economic damages. Id. ¶ 21. As a result, LM alleges, the agent determined that "the Act 6 amount was $5,969.42 and LM General was entitled to a credit of $15,000. The medical bills did not exceed $15,000 and Mr. Martin exhausted his first party medical benefits of $5,000." Id. Mr. Martin had received a settlement of $15,000 from the third-party driver involved in the accident. Id. ¶ 23. Mr. Martin's medical treatment was $15,409.00, and "the Act 6 amount was $5,969.42." Id. ¶ 24. The agent determined that Mr. Martin had been made whole by the settlement and closed the insurance claim. Id. ¶ 25.

The Martins brought this action in Pennsylvania state court alleging breach of contract, statutory bad faith, unjust enrichment, and violation of the Pennsylvania State Insurance Statute. Notice of Removal (ECF 1). LM removed on the basis of diversity. Id. The Martins amended their Complaint, adding a claim of violation of the Pennsylvania State Insurance Statute and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Am. Compl. (ECF 11) ¶¶ 52-59. LM moved to dismiss; its motion was granted in part and denied in part, dismissing the Martins' claims of unjust enrichment and violation of the Pennsylvania statutes. Order Re: Mot. to Dismiss (ECF 16). This left the breach of contract claim and the statutory bad faith claim. Id.

## II.   SUMMARY OF BRIEFING

### A.   LM's Motion for Partial Summary Judgment

LM moves for partial summary judgment in relation to the Martins' claim of statutory bad faith. Mot. (ECF 52-2) at 1. LM alleges that the Martins' insurance policy "contained limited tort and non-stacked UIM coverage in the amount of $25,000 each person" and that the Martins rejected "stacked UIM coverage." Mot. at 4. LM argues that because UIM claims are a hybrid of first- and third-party claims, an insurer is permitted to reasonably contest and challenge the claim.

3

Id. at 8, citing Condio v. Erie Ins. Exch., 899 A.2d 1136, 1143-44 (Pa. Super. 2006). Furthermore, LM argues that differences in valuation, absent specific evidence of unreasonableness by the insurer, do not automatically give rise to bad faith. Mot. at 9-10.

LM argues that it had a reasonable basis for its UIM valuation, namely that the Martins selected limited tort coverage resulting in the Martins waiving any claims for non-economic damages unless the injuries pierced the limited tort threshold, that is, if his injuries were "serious" as defined by statute. Id. at 10-11, 11 n.3. LM further argues that it had a reasonable basis for concluding that Mr. Martin's injuries were not serious enough to pierce the limited tort threshold because many of the injuries and degenerative changes could be associated with different causes, such as arthritis. Id. at 11. Furthermore, LM suggests that Mr. Martin recovered quickly without requiring any injections or surgeries. Id. at 11-12. LM also argues that the $15,000 settlement between the Martins and the third-party driver covered all economic damages and therefore Mr. Martin was not entitled to any from LM. Id. at 12. LM seeks a determination that the Martins are bound by their alleged limited tort coverage selection and their rejection of stacking due to the e-signatures on file. Id. at 13-14.

### B. The Martins' Response in Opposition

The Martins respond, arguing that LM acted in bad faith by not conducting any investigation into Mr. Martin's claims or injuries. Resp. (ECF 64) at 2-3, 6. They argue that bad faith can be established by a showing of "lack of good faith investigation into facts, and failure to communicate with the claimant." Id. at 6, citing Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1232 (1994).[1] They also allege that the subsequent "litigation" (presumably referring

---

[1] Romano v. Nationwide Mut. Fire Ins. Co. states that "bad faith means a frivolous or unfounded refusal to pay, lack of good faith investigation into fact, and failure to communicate with the claimant." 646 A.2d at 1232 (emphasis added). The Martins omit the first factor from their citation despite LM's argument that its refusal to pay was founded on a reasonable basis.

4

to an internal appeals process) was in bad faith. Resp. at 3. The Martins argue that LM exhibited bad faith by failing to interview the Martins or the third-party driver, investigate the accident scene, review Mr. Martin's work-related restrictions, or use other investigative tools available to LM. Id. at 9-10. The Martins also argue that LM acted in bad faith by denying coverage before it reviewed the evidence of Mr. Martin's injury claim. Id. at 11. They argue that LM's failure to offer any insurance pay out for over two years is further evidence of bad faith. Id. at 12.

The Martins argue that by contesting whether Mr. Martin's injuries were serious enough to pierce the tort liability coverage, LM has engaged in bad faith by "contesting causation." Id. at 12-13. The Martins argue that this disagreement is a factual dispute that requires denial of summary judgment. Id. at 14. They argue that LM's decision to pay for some of Mr. Martin's medical bills but deny UIM coverage was in bad faith. Id. The Martins also argue that the question of whether Mr. Martin's injuries meet the limited tort threshold is a question for the jury. Id. at 16, citing Washington v. Baxter, 719 A.2d 733 (Pa. 1998).[2] The Martins argue that LM exercised bad faith when the assigned UIM adjuster violated LM's training and regulations by not conducting an asset check of the third-party driver and because the assigned adjuster had not received medical training or training on medical terminology. Resp. at 16.

The Martins also argue that there is a factual dispute as to whether the Martins signed the limited tort selection form or the rejection of stacking form. Id. at 19. The Martins argue that

---

[2] While the Pennsylvania Supreme Court has indicated that the question of the severity of a plaintiff's injuries could likely be a question for the jury, the court qualified that "the traditional summary judgment standard [is] to be followed and that the threshold determination [is] not to be made routinely by a trial court judge . . . but rather [is] to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." 719 A.2d 733, 740 (Pa. 1998). The Martins regularly suggest that the Washington court overturned an award of summary judgment. Resp. at 16, 19, 23. In fact, the Pennsylvania Supreme Court upheld the award of summary judgment in favor of the defendant, ruling that reasonable minds could not differ on whether the injury in question, a collection of "contusions, sprains, and strains," was "serious." Washington, 719 A.2d at 741.

documents provided in discovery support a conclusion that the Martins did not sign the two forms in question. Id. at 21. They argue that the forms in question had a blank signature line. Id. at 21 22. Even if the forms had been signed, the Martins argue that Mr. Martin's injuries could be considered "serious" and would therefore pierce the limited tort coverage. Id. at 20, 22.

### C.     LM's Reply in Support

LM replies, first arguing that the Martins' failure to properly admit or deny the averments made in LM's Statement of Fact results in those facts being undisputed for the purpose of the Motion. Reply (ECF 65) at 1. LM also notes that the Martins do not provide any supporting evidence for their claims about the seriousness of Mr. Martin's injuries, and in fact those averments are directly contradicted by Mr. Martin's own deposition testimony. Id. at 3. LM argues that the Martins opted for limited tort coverage and rejected stacking through their e-signatures. Id. at 4. LM points to Mrs. Martin's e-mail in the e-signature log and the final copies of the forms reflecting an e-signature as evidence that they e-signed the forms in question. Id. at 4-7. LM argues that Mrs. Martin's denial that she signed the forms does not create a question of fact because it does not overcome the evidence of the e-signatures. Id. at 7-9.

LM argues that it had a reasonable basis for determining that Mr. Martin's claim did not exceed the $15,000 settlement because the total medical costs after insurance adjustment were less than $15,000, any non-economic damages were precluded, and Mr. Martin's injuries were not serious enough to pierce the limited tort threshold that would cover non-economic damages. Id. at 9-12. Finally, LM argues that its investigation was thorough enough to satisfy the standard for reasonable basis in a statutory bad faith claim because the demand package sent by the Martins precluded LM from needing to conduct its own investigation into Mr. Martin's medical injuries and, moreover, there is no requirement that an investigation be perfect. Id. at 12-15.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Id. at 255. A party seeking summary judgment always bears the initial responsibility for identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

### IV. ANALYSIS

LM seeks partial summary judgment on two points. First, it seeks summary judgment determining that the Martins' e-signatures on the limited tort form and the rejection of stacking form were valid and binding. Second, LM seek summary judgment determining that it had a reasonable basis for denying coverage, namely that Mr. Martin's injuries were not serious enough to pierce the limited tort coverage that the e-signatures bound the Martins to, and that the $15,000 settlement from the third-party driver had already covered the Martins' economic damages. Both points are addressed in turn.

## A.      Whether the Martins' E-Signatures on the Forms Were Valid

LM argues that the Martins are bound by their signatures on the limited tort coverage form and the rejection of stacking form. Mot. at 13-14. The Martins claim that there is no evidence that either of the Martins signed the forms, pointing to a blank signature line and testimony by Mrs. Martin that she did not electronically sign (or does not remember electronically signing) the forms in question. Resp. at 21-22. However, in its Reply, LM provides specific evidence showing the electronic signature on the forms, as well as electronic records tying the Martins' online presence within LM's system to the electronic signatures on file for their policy. Reply at 4-7. LM also notes that Mrs. Martin's denial that she electronically signed the forms is not enough to create a dispute of material facts, especially when weighed against the electronic evidence and the evidence of the electronically signed forms. Id. at 7-9.

Under Pennsylvania law, "[i]f a law requires a signature, an electronic signature satisfies the law." 73 Pa. Stat. Ann. § 2260.303(d). An "electronic signature is attributed to a person if it was the act of the person." 73 Pa. Stat. Ann. § 2260.305(a). The act of the person can be shown "in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable." Id. The effect of an electronic signature is "determined from the context and surrounding circumstances at the time of its creation, execution or adoption, including the parties' agreement, if any; and . . . otherwise as provided by law." Id. § 2260.305(b).

While the Third Circuit has not ruled directly on the issue, courts within the Third Circuit have generally found that an electronic signature is binding even where the signer does not remember electronically signing the document. See Jallad v. Madera, 474 F. Supp. 3d 667, 672 (E.D. Pa. 2020) (Fure, J.) (finding that an electronic signature on a limited tort waiver form was

8

valid in spite of the plaintiff's argument that there was no evidence of actual knowledge of the waiver); Dicent v. Kaplan Univ., 2018 WL 4171600, at *4 (W.D. Pa. June 15, 2018) (finding that the plaintiff had failed to create a genuine issue of fact when denying he electronically signed a document in spite of security measures tying his identity to the electronic signature); Schrock v. Nomac Drilling, LLC, 2016 WL 1181484, at *3-4 (W.D. Pa. Mar. 28, 2016) (finding that "naked assertions" denying an electronic signature were not enough to create a genuine dispute of material fact as to the validity of an electronic signature).

The Martins have not presented any evidence, beyond Mrs. Martin's deposition testimony that she did not sign or does not remember signing electronically, that would indicate that the electronically signed forms were invalid. By contrast, LM presents evidence that the Martins did electronically sign both forms through evidence of the forms showing electronic signatures, the Martins' electronic payments and communications, Mrs. Martin's e-mail and I.P. address (associated with the Martins' physical address) used to electronically sign the forms, and time stamps showing that the Martins viewed and electronically signed the forms within six hours. Reply at 4-7. In the face of this evidence, the Martins have not presented evidence that would raise a genuine question of material fact as to the validity of the electronic signatures on the limited tort form and the rejection of stacking form. As such, LM's Motion for Partial Summary Judgment on the issue of the binding nature of the two forms in question shall be granted.

**B.     Whether Mr. Martin's Injuries and the Resulting Impairment Were "Serious"**

LM also seeks summary judgment as to the Martins' statutory bad faith claim.

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. To prove bad faith, the plaintiff must show that (1) "the defendant did not have a reasonable basis for denying benefits under the policy," and (2) that the defendant "knew or recklessly disregarded its lack of reasonable basis in denying the claim." Terletsky v. Prudential Prop. & Caus. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994). Mere negligence or bad judgment is not bad faith. Id. LM argues that it had a reasonable basis for denying the Martins' claim because they were not entitled to non-economic damages due to the limited tort coverage. Mot. at 10-11.

Assuming the e-signature on the two forms was valid, discussed above, the Martins cannot maintain an action for any non-economic damages arising out of a motor vehicle accident that is the fault of another person unless the injury sustained qualifies as a "serious injury." 75 P.S. §§ 1705(a)(1), (d); Washington v. Baxter, 719 A.2d at 736.

A "serious injury" is defined as a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa. Stat. Ann. § 1702. The parties appear to agree that neither "death" nor "permanent serious disfigurement" applies in this case. Therefore, in order for LM to show that it had a reasonable basis for denying coverage of non-economic damages, LM must show that there is no question of material fact as to whether Mr. Martin suffered a "serious impairment of body function." This requires a two-part inquiry:

> (1) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?
> (2) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function . . . In determining whether the impairment was serious, several factor should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

Washington v. Baxter, 719 A.2d at 741.

The Martins present a number of cases in its argument that there is a question of fact as to the severity of Mr. Martin's injuries are "serious." Resp. at 19-24. The Martins also argue that the seriousness of Mr. Martin's injuries is inherently a question of fact that should be left to the jury. Id. at 14. However, the Pennsylvania Supreme Court has made clear that "the traditional summary judgment standard" is to be followed, and that summary judgment may be granted where "reasonable minds could not differ on the issue of whether a serious injury had been sustained." Washington, 719 A.2d at 740.

While the Third Circuit has not ruled on what constitutes a "serious impairment of bodily function," other courts' decisions provide guidance. The Pennsylvania Supreme Court has ruled that damage to the spine resulting in "permanent and persistent cervical spine pain" and requiring further treatment and three months of missed work and resulting in the injured party being unable to turn his head or lift his arms without significant pain was a serious impairment of bodily function. Walker v. Aiken, 237 A.3d 1052 (table), 2020 WL 3119048, at *6 (Pa. June 11, 2020). The Superior Court of Pennsylvania has determined that "a herniated lumbosacral disc, where the herniation is permanent and will not improve" resulting in numbness in the face and toes and daily back pain, permanently restricting the injured party's employment capabilities and his ability to sit or be physically active for long periods of time, and continuing to require invasive medical treatment, could reasonable raise a question of whether the injury was serious. Kelly v. Ziolko, 734 A.2d 893, 895, 899 (Pa. Super. 1999).

Judge Pappert on the Eastern District of Pennsylvania has found that there was a question of fact as to the seriousness of an injury where the party suffered from lingering and constant neck pain, physical limitations, extensive treatment, and was unable to care for his children or fully participate at work. Liberty v. State Farm Mut. Auto. Ins. Co., 2016 WL 7429186, at *3 (E.D. Pa.

11

Dec. 21, 2016) (Pappert, J.). Similarly, Judge Robreno found there was a question of material fact as to the seriousness of an injury where the plaintiff suffered from multiple disc bulges that caused significant pain, permanent sprains to the neck and back that caused permanent pain, all of which resulted in significant lifestyle changes and trouble finding employment. Peterman v. Sakalaukas, 978 F. Supp. 2d 439, 442-43 (E.D. Pa. 2013) (Robreno, J.).[3] Judge Lowell found a question of material fact even where defendants argued that the impairment in question was caused by pre-existing conditions. Sanderson-Cruz v. U.S., 88 F. Supp. 2d 388, 394 (E.D. Pa. 2000) (Lowell, J.).

By contrast, the Pennsylvania Supreme Court has ruled that a diagnosis consisting of "contusions, sprains, and strains" that resulted in the injured party missing five days of work and four work shifts, foot pain approximately every other week, but no other interruption of his daily routine other than using a riding lawn mower rather than a push lawn mower, was not a "serious impairment of bodily function." Washington, 719 A.2d at 740-42. The Superior Court of Pennsylvania has determined that a plaintiff fails to show a "serious injury" where "he did not provide any objective medical evidence regarding the degree of an impairment and the extent of any pain suffered." Benton v. Shull, 240 A.2d 904 (table), 2020 WL 5269779, at *4 (Pa. Super. Ct. Sept. 4, 2020) (noting that the evidence of "*some* injuries" including sprains and spasms was

---

[3] See also Cadena v. Latch, 78 A.3d 636, 643 (Pa. Super. Ct. 2013) (reversing an award of summary judgment because the plaintiff had shown at least eight injuries, continuous pain, and an inability to partake in life's activities including caring for her children); Robinson v. Upole, 750 A.2d 339, 343 (Pa. Super. Ct. 2000) (concluding that there is a question of fact where the plaintiff could no longer do physical activities including housework or recreation without pain and could not sleep); Hellings v. Bowman, 744 A.2d 274, 276 (Pa. Super Ct. 1999) (determining that an injury resulting in ongoing numbness and pain, a decline in physical and recreational activity, and ongoing treatment raised a question of fact); Furman v. Shapiro, 721 A.2d 1125, 1127 (Pa. Super Ct 1998) (concluding there was a question as to the seriousness of injuries that resulted in several back conditions, trouble walking or lifting heavy objections, switching from full-time to part-time employment, and persistent symptoms three years later); Jones v. Jones, 2017 WL 4466475, at *7 (E.D. Pa. Aug. 21, 2017) (Lloret, M. J.) (finding that an injury that resulted in a back impairment, two weeks of missed work, trouble walking and showering, inability to bend over or carry heavy items, and requiring injections raised a question of material fact as to the seriousness of the injury).

not enough to show that the injuries were serious in light of pre-existing conditions (emphasis added)). The Superior Court of Pennsylvania has also found no question of material fact where the plaintiff did not require any treatment for over five years and where his employer was unaware of any limitations or problems performing routine tasks. McGee v. Muldowney, 750 A.2d 912, 914 (Pa. Super. Ct. 2000). Judge Leeson of the Eastern District of Pennsylvania recently granted summary judgment in favor of the defendants where some of the plaintiff's injuries were pre-existing and others did not constitute substantial interference with any bodily function. Torres v. U.S., 2023 WL 2368728, at *26 (E.D. Pa. Mar. 6, 2023) (Leeson, J.); but see Depretis v. State Farm Mut. Auto. Ins. Co., 2021 WL 1401680, at *3-5 (E.D. Pa. Apr. 14, 2021) (Padova, J.) (finding that there was a question as to whether injuries from a car accident that exacerbated pre-existing conditions constituted serious impairment of bodily function).

The overarching theme of these cases provides guidance on which injuries raise a question of material fact and which do not. Herniated discs are likely to raise a genuine dispute of fact as to their seriousness; sprains and strains typically do not. Injuries that result in significant, or significantly lingering, pain raise a material question of seriousness; pain that is mild or only occasional does not. Injuries that significantly interrupt daily or work-related activities such as lifting objects, turning the head, or sitting for long periods raise a question of fact as to the injury's seriousness; injuries resulting in smaller changes such as switching from a push lawn mower to a riding lawn mower do not. It appears that only case from the Eastern District of Pennsylvania granting summary judgment in favor of the defendants was Torres v. U.S., where the serious interference of bodily function was caused by a pre-existing condition. 2023 WL 2368728, at *26.

13

The facts, taken in light most favorable to the Martins, could raise a question of material fact as to whether Mr. Martin has suffered from an impairment as a result of the accident.[4] Specifically, the parties agree that Mr. Martin suffered from a neck sprain/strain, knee pain, elbow sprain, and neck and back pain. Def. Statement of Facts ¶ 9. In September 2020, almost four months after the accident, Mr. Martin was still suffering from an elbow strain and pain and was recommended to go to therapy but did not require bracing. Id. ¶ 12. In November 2020, just over five months after the accident, Mr. Martin continued to complain of pain in his spine,[5] elbow, and knee, although the medical records indicate that Mr. Martin's pain had "improved significantly." Id. ¶ 13. According to Mr. Martin's deposition testimony, he cannot lift his arm, although medical records indicate that he had full range of motion in all injured areas in 2020. Id.; Resp. Ex. F (ECF 64-8) at 56:23-57:8. Mr. Martin attended 68 therapy visits between June 15, 2020 and November 10, 2020. Def. Statement of Facts ¶ 15. The Martins also claim that Mr. Martin "ultimately received pain injections to his affected areas as a result of his injuries from this accident," although his deposition testimony merely indicated that an injection was scheduled for November 2022 and

---

[4] While the facts must be taken in a light most favorable to the non-moving party (Anderson, 477 U.S. at 255), that requirement is made more difficult by the factual misrepresentations that appear to be included in the Martins' Response. For example, the Martins claim that Mr. Martin was taken from the scene of the accident to the hospital via ambulance. Resp. at 14-15. They do not provide any support for that claim, and it is directly contradicted by evidence presented by LM (Def. Statement of Facts ¶ 7; Mot. Ex. D (ECF 52-7)) and by Mr. Martin's own deposition testimony (Resp. Ex. F (ECF 64-8) at 30:15-21). The Martins also make misstatements of the law as to the admissibility of some of LM's evidence, namely that the police report made in relation to the accident is hearsay. Pl's Statement of Fact ¶ 6-7. Under Third Circuit law, police reports are admissible unless the opposing part can show that the report is untrustworthy. Fed. R. Evid. 803(8); U.S. v. Versaint, 849 F.2d 827, 831-33 (3d Cir. 1988). The Martins have not done so.

[5] LM implies that the spinal pain was caused by "degenerative disease," interpreted to be arthritis that existed before the accident but was discovered because of the other injuries resulting from the injury. Mot. at 2-3, 11. However, the Martins present evidence that spinal injury was "post traumatic." Pl's Statement of Facts (ECF 64-1) ¶ 14. Taking the evidence in the light most favorable to the Martins, this Court will assume for the purposes of this inquiry that the spinal injury was caused by the accident, not by arthritis.

not whether that injection actually occurred. Pl's Statement of Facts (ECF 64-1) ¶ 15; Resp. Ex. F (ECF 64-8) at 52:11-53:6.

These facts could also raise a question of material fact as to whether the impairment in question is "serious." "In determining whether the impairment was serious, several factor should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." Washington, 719 A.2d at 741. Mr. Martin was treated through therapy lasting five months. Def's Statement of Facts ¶ 14; Pl's Statement of Facts ¶ 14. He has testified that he still feels back and elbow pain, cannot sit for long periods, cannot lift his arm, and cannot partake in typical daily employment, household, and life activities. Resp. Ex. F (ECF 64-8) at 53:8-72:6. Mrs. Martin also testified that her husband's activities and ability to perform household chores was limited, and that he cannot lift his arm. Resp. Ex. E (ECF 64-7) at 17:4-18:14; 57:23-58:23. The medical records from 2020 reflect ongoing pain, and this Court is not aware of any medical records that would cast doubt on Mr. Martin's deposition testimony as to the state of his injuries at present. Based on the deposition testimony and the lack of contemporaneous medical records that would contradict that testimony, there is a question of material fact as to whether Mr. Martin suffered from a serious impairment of bodily function, thereby raising a question of material fact as to whether LM had a reasonable basis to deny Mr. Martin non-economic damages. This Court will therefore deny summary judgment as to the statutory bad faith claim.

### C. Whether Economic Damages Were Covered by the Settlement

LM argues that it had a reasonable basis for denying all damages, economic and non-economic alike. As discussed above, there is a question of fact as to whether LM had a reasonable basis for denying non-economic damages because of the question of the seriousness of Mr. Martin's injuries. Whether LM had a reasonable basis for denying the economic damages hinges

15

on whether Mr. Martin's economic damages were fully covered by the $15,000 settlement with the third-party driver.

Based on the undisputed medical records and treatments that Mr. Martin underwent leading up to submitting his claim, it appears that Mr. Martin's medical costs totaling $15,409.00 were wholly covered by a combination of the Act 6 reduction and the $15,000 settlement with the third-party driver. Def. Statement of Facts ¶¶ 21-24. As such, the Martins' economic damages, calculated at the time that their submitted their claim, appear to have been covered by the settlement, providing LM with a reasonable basis for denying further coverage.

However, because Mr. Martin indicated in his deposition that he had additional medical treatments and procedures as recently as November 2022, and because LM's calculations do not appear to factor the cost of those treatments into their analysis, there could be a question of fact as to whether LM had a reasonable basis to deny coverage of all economic damages as well as non-economic damages. The question of whether the settlement covered all the Martins' damages is intertwined with the question of whether the Martins were entitled to have their non-economic damages covered. There is therefore a question of material fact as to whether LM had a reasonable basis to deny all coverage where the insured may have been entitled to economic and non-economic damages alike. LM's Motion for Partial Summary Judgment shall therefore be denied as to the economic damages as well as the non-economic damages.

V. **CONCLUSION**

For the foregoing reasons, the Motion for Partial Summary Judgment as to the validity of the Martins' electronic signatures shall be **GRANTED** because the Martins have not presented any evidence that the electronic signatures on the limited tort form and the rejection of stacking form are invalid. The Motion for Partial Summary Judgment as to the statutory bad faith claim

shall be **DENIED** because there is a question of material fact as to whether Mr. Martin's injuries were "serious" as defined by the statute, thereby raising a question of material fact as to whether the Martins were made whole by the $15,000 settlement.

    An appropriate Order follows.